**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| WILLIAM PENA PENA | CIVIL ACTION NO. 26-1418 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| BRIAN ACUNA, ET AL. | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

William Pena Pena ("Petitioner"), a convicted cocaine trafficker, filed this action for a writ of habeas corpus. Record Document 1. The Magistrate Judge recommended Petitioner be released because his removal was not significantly likely in the reasonably foreseeable future. Record Document 14. Respondents filed a timely objection. Record Document 17. For the following reasons, the Court **DECLINES TO ADOPT** the Report and Recommendation, Record Document 14, and the Petition for Writ of Habeas Corpus, Record Document 1, is **DENIED**.

### Background

Petitioner, a Cuban citizen, had but squandered a chance at lawful status in the United States. Petitioner entered the country as a refugee in 1980, and almost a decade later, the Department of Homeland Security ("DHS") made him a lawful permanent resident. Record Document 9-1 at 1. In return, Petitioner trafficked cocaine into the United States. On November 3, 2000, Petitioner was convicted of narcotics and firearms crimes in the United States District Court for the Southern District of Florida. *Id.* He was convicted of possession with intent to distribute

cocaine, possession of a firearm by a convicted felon, and possession of an unregistered silencer. *Id.* The Southern District of Florida sentenced Petitioner to 380 months imprisonment. *Id.*

After Petitioner's release from incarceration, DHS transferred him to its custody. Record Document 9-1 at 2. On January 10, 2020 an immigration judge ordered Petitioner removed to Cuba. *Id.* Perhaps unsurprisingly, the government of Cuba never responded when DHS asked to repatriate Petitioner, who had been convicted of narcotics and firearms crimes. *Id.* In June 2020, DHS released Petitioner under an order of supervision. *Id.* at 3.

On July 10, 2025, DHS detained Petitioner for removal. Record Document 9-1 at 3. DHS again tried to repatriate Petitioner back to his home country of Cuba. *Id.* DHS completed a "travel package," which included his conviction records and passport, and scheduled him for a removal flight. *Id.* But on November 21, 2025, the government of Cuba refused to take back its own citizen. *Id.*

Almost immediately, DHS tried to remove Petitioner to a third country. *See* Record Document 9-1 at 3. On November 25, 2025, DHS served Petitioner with a notice of removal to Mexico, but he refused to sign it. *Id.* Around this time, Petitioner verbally refused removal when he told a deportation officer that he "did not want to go to Mexico." Record Document 1 at 9. Then, several months later and after bed space became available, DHS transferred Petitioner to a new facility for a second attempt at removal to Mexico. Record Document 9-1. at 4. But, on March 22, 2026, Petitioner again refused to comply with removal. *Id.* Petitioner, by his own admission,

refused removal to Mexico when he told a deportation officer that he "was not interested in going to Mexico" because of his age and health. Record Document 1 at 10.

In the months since, Petitioner has continued to obstruct his removal. On June 1, 2026, after being served with a third country notice of removal to Mexico, Petitioner refused to comply. *See* Record Documents 17-5 at 1; 17-6 at 1. The following day, DHS served Form I-229(a), Warning for Failure to Depart, on Petitioner but he refused to sign it. Record Document 17-7 at 1. On July 6, 2026, Petitioner refused to sign a second Form I-229(a) that was served upon him. Record Document 17-8 at 1. Most recently, on September 4, 2026, DHS served Petitioner with a third Form I-229(a), and he refused to sign that warning too. Record Document 17-6 at 2.

**Standard**

The district court must review a magistrate judge's decision *de novo* when a party has objected. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). In conducting a *de novo* review, the district court examines the entire record and makes its own independent assessment of the law. *See Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983) ("[T]he statutory obligation of the district court to arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made is not satisfied by a mere review of the magistrate's report itself.").

**Analysis**

The United States Supreme Court in *Zadvydas* limited post-removal-order-detention to a period "reasonably necessary to bring about the alien's removal from

the United States." 533 U.S. at 689. *Zadvydas* recognized that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. But after six months, if removal is not significantly likely in the reasonably foreseeable future, continued detention is not authorized. *Id.* at 699.

The removal period, however, is extended when an alien acts to prevent his removal. *See, e.g.*, *Roach v. Holder*, 344 F. App'x 945, 947 (5th Cir. 2009) (holding that a petitioner's vexatious litigation prevented his removal and extended the removal period). 8 U.S.C. § 1231(a)(1)(C) states that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."

In this case, Petitioner argued, and the Magistrate Judge found, that he did not obstruct his removal. *See* Record Documents 14 at 11; 18 at 10. Among other things, Petitioner said that he never "refused a direct order" of removal to Mexico but only asked "questions" and stated "preferences." Record Document 18 at 4. The Magistrate Judge also held, as a seemingly bright line rule, that withholding consent to removal does not qualify as obstruction to removal. Record Document 14 at 13. This Court is not persuaded.

Federal courts, including this one, have held, and more than once, that an unlawful alien's refusal to cooperate is enough to obstruct removal. *See, e.g.*, *Piedrahita-Bello v. U.S. Immigration and Customs Enforcement*, No. 26-1338, 2026

WL 2723433, at *3 (W.D. La. Sept. 15, 2026) (finding Cuban citizen refused to cooperate when "he repeatedly refused to sign notices authorizing his removal to Mexico."); *Martinez Diaz v. Acuna*, No. 26-1462, 2026 WL 2691470, at *2 (W.D. La. Sept. 14, 2026) (holding Cuban citizen refused to cooperate where he "refused removal to Mexico and refused to sign Form-I229(a)."); *Torres v. Tate*, No. 26-0543, 2026 WL 2455365, at *2 (S.D. Tex. Aug. 21, 2026) (holding Cuban national refused to cooperate where he "refused to sign" notices of removal on three occasions).

Here, Petitioner has refused to cooperate with his removal for over a year. Although Petitioner claimed that he did not "refuse an order," that is a distinction without a difference. Petitioner refused to comply with removal when he told DHS officers that he "did not want to go to Mexico" and that he "was not interested in going to Mexico." Record Document 1 at 9-10. Through these statements, Petitioner withheld his consent to removal and that had the same effect as refusing to sign a notice of removal, which Petitioner also refused to do. *Id.* at 3. Furthermore, for months, Petitioner refused to sign multiple Form-I229(a) warnings for failure to depart. Record Documents 17-7 at 1; 17-8 at 1; 17-9 at 1; 17-10 at 2; 17-11 at 2. Because DHS's "inability to remove him is in fact due to consistent refusals to cooperate by the alien and not external matters over which the alien has no control[,]" Petitioner is not entitled to *Zadvydas* relief. *Anadji v. Keisler*, No. 07-184, 2008 WL 11388565, at *6 (S.D. Tex. June 26, 2008).

In addition to his *Zadvydas* claim, Petitioner also asserted that his detention violated the Due Process Clause and the *Accardi* doctrine. Record Document 1 at 20-

23. The Magistrate Judge did not address these arguments in the Report and Recommendation. *See generally* Record Document 14. In short, Petitioner argued that he should have received notice and an interview when DHS revoked his order of supervision and that it had no lawful basis for that revocation. Record Document 1 at 21. The Court also finds that Petitioner is not entitled to relief under these alternative theories. Petitioner received a Notice of Revocation of Release from DHS on March 3, 2026. Record Document 17-4. That notice explained his release was revoked "to effect your expeditious removal to Mexico." *Id.* at 2. Removal is a legitimate reason for revoking an order of supervision. 8 C.F.R. § 241.13(i)(2). Finally, DHS offered Petitioner an opportunity for an informal interview, but Petitioner refused to sign the Notice of Revocation of Release. Record Documents 17-2 at 4, 17-4 at 1, 3. The Court holds, therefore, that Petitioner's alternative claims for relief fail.

**Conclusion**

For the foregoing reasons, the Petition for Writ of Habeas Corpus, Record Document 1, is **DENIED**. A judgment consistent with the terms of this memorandum ruling shall issue herewith.

**DONE AND SIGNED** at Shreveport, Louisiana, this 2nd day of November, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE